James C. Smith, J.—[After stating facts.]
After a careful consideration of the questions raised by the *444 affidavit, on which, the ex parte writ of certiorari was allowed in this case, I am clearly of the opinion, that the writ was issued unadvisedly, and that the present motion to supersede it ought to be granted, for the reason that there is no apparent error in the proceedings sought to be reviewed.
The ground of the rejection, as I understand the statements in the affidavit, was, in substance, that the supervisors had no authority to consider, for the purposes of equalization, property upon which no valuation had been fixed by the local assessors, and that the State assessors had no original power in that respect, but merely an appellate power to review the action of the bond of supervisors.
In my judgment, the ground taken by the State assessors was clearly correct. The original power of valuation and assessment of property, resides in the local assessors. With a single exception, which-will be hereafter referred to, no person or property can be entered upon the assessment roll, for the purposes of taxation, except by the assessors. Their duties in these respects are specifically pointed out by statute (1 R. S. 390, §§ 8-18).
The duties of boards of supervisors are of an altogether different nature. They are simply to equalize valuations as between the several towns and wards in the county. They deal with the towns and wards as units. They have no original power of assessment. If the assessors have omitted a taxpayer, or an item of property liable to taxation, the supervisors can not remedy the omission by amending the assessment roll. Nor can they legitimately take the fact of such omission into consideration, for the purpose of increasing the valuation of property in the town or- ward where the omission occured. Any increase of the valuation, based upon such consideration, would have the unjust effect of taxing the property holders whose names *445 were entered on the roll, for the property of those whose names were omitted. The duties of the boards of supervisors in respect to equalizing valuations between the towns are defined by statute (1 B. 8. 395, § 31). No mode is provided by law, in which the board can ascertain whether a taxpayer or an item of taxable property has been omitted by the assessors, or by which the board can determine the amount and value of the omitted property. It is apparent, therefore, that if, as the counsel for the towns offered to show before the State assessors, the board of supervisors of Monroe, in making their equalization, took into consideration the alleged facts offered to be shown in respect to the omission of the assessors of the wards, to assess certain property and certain property holders in their respective wards, the board in that respect proceeded upon an erroneous basis, and the State assessors properly declined to follow them.
An ample remedy is provided by statute for an omission from the assessment roll of any land or property legally liable to taxation.
The assessors, on the application of any three taxpayers in the town, city, or ward in which the omission occurred, may enter the omitted property in the assessment roll of the next succeeding year (L. 1865, ch. 453, § 1); or the board of supervisors, on the petition of the assessors, may tax it in the current year in which the omission occurred, nr in the next succeeding year (Id. § 3). The board of supervisors may, also, on the recommendation of the county court, correct any manifest clerical or other error in any assessment . . . which shall come before such board for their action, confirmation, or review (L. 1869, ch. 855, §5 ; am’d L. 1871, ch. 695). And for a willful omission or neglect of duty, an assessor is liable by statute to a forfeiture of fifty dollars (1 B. 8. 394, § 39), or to punishment by fine or imprisonment, for a misdemeanor (Id. 431, § 16).
*446 If these views are correct, they necessarily lead to the conclusion that the offers to show that property of certain individuals and corporations, and the surplus of certain savings banks, had been omitted from the rolls, were properly rejected.
They lead to a like result in respect to the offer to show that real estate belonging to the city, and liable to taxation, was entered on the rolls, and marked “free.” If there was any error on the pairt of the assessors in respect to such real estate, it was in holding that it was exempt from taxation, and in omitting to assess it. Their decision .on that point could not be reviewed by the board of supervisors, in the exercise of their power of equalization. And even if the board could review and reverse the decision, they had no power to value and assess the property.
The offer to show that the personal property of certain individuals and the capital stock of certain banks were assessed at much less than their value, although differing somewhat in form from the other offers, really presented the same question, to wit, whether the board of supervisors possess any original power to value and assess the property of individuals, or rather, whether, in exercising the power of equalizing valuations as between the several towns and wards, they may take into consideration the fact that some individual taxpayer has been omitted altogether, or that his property has been assessed below its true value. The discussion already had seems to dispose of the question.
Another reason suggested by the counsel for the defendants for holding that the offers were properly rejected, so far as they related to personal property, is that the power of equalization conferred by statute on boards of supervisors, is confined to real property. Clearly it was so limited by the Revised Statutes. Section 31 (1 R. S. 395), which confers the power, provides that the board shall examine the assessment *447 rolls of the several towns, for the purpose of ascertaining whether the valuations in one town or ward bear a just relation to the valuations in all the towns and wards in the county; and they may increase or diminish the aggregate valuation of real estate in any town or ward, by adding or deducting such sum upon the hundred as may, in their opinion, be necessary to produce a just relation between all the valuations of real estate in the county; but they shall, in no instance, reduce the aggregate valuations of all the towns and wards below the aggregate valuation thereof, as made by the assessors.
It is claimed, however, on the part of the relators, that by the provisions of chapter 49, of 1876 (L. 1876, p. 40, c. 49), the law respecting the equalization of assessments, as above stated, has been materially changed, and that it was the duty of the State assessors in the present case, in view of the provisions of that act, to receive and consider the evidence which they rejected. Section 3 of that chapter provides that on every hearing or trial on an appeal from the decision of a board of supervisors in the equalization of assessments, “ the evidence shall in part relate to the assessment and full and true value of real and personal property, and the said State Assessors shall determine whether or not injustice has been done to the town, ward or city, so appealing, in the equalization of real and personal property assessed therein, as compared with the other wards, towns or cities of said county, and shall determine whether any, and if any, what deductions ought to be made from the aggregate corrected valuation of said real and personal property, as made by the board of supervisors, and shall also determine to what town, &c., said deductions, if any, shall be added,” &c.
The object of the act of 1876, as I read it, was merely to regulate the practice in appeals to the State assessors. Its language can be best construed by reading it *448 in connection with other statutes, in pari materia. The appellate power now possessed by the State assessors was formerly vested in the comptroller. It was transferred from him to the State assessors, by section 5, chapter 351, of Laws of 1874 {L. 1874, p. 464). The right of appeal to the comptroller was first given by chapter 312, Laws of 1859 {L. 1859, p. 702, § 13). That act is referred to in the title of chapter 49 of 1876, and its provisions throw light on the meaning of the latter act. The only provision in the act of 1859 concerning the practice in respect to bringing appeals to a hearing, was in these words: “The comptroller shall hear the proofs of the parties, which may be presented in the form of affidavit or otherwise, as he shall direct” (§ 13). Under the provisions of that act, a contestant before the comptroller had no means of knowing in advance the allegations, or even the proofs of his adversary. Under the act of 1876, the assessors, with the approval of the comptroller, are authorized to prescribe a form of petition and notice of appeal, to be followed in all cases, and also to make rules and regulations in relation to bringing appeals (§ 1). There must be a trial or hearing at a fixed time or place (§ 2). And if the appellant fail to appear and produce evidence to sustain the appeal, the assessor shall dismiss it {Id.). Then follows section 3, already quoted, which, I take it, was intended to fix some proper limit to the evidence in such cases, instead of allowing the wide, range given by the act of 1859. The section requires, as I read it, that the evidence shall be pertinent to the issue. Such is the meaning of the requirement that the evidence shall relate, in part, to the assessment and true value of real and personal property. The section also requires that, on the evidence, the assessors shall determine whether or not injustice has been done, &c.; that is to say, they are to review the action of the board of supervisors, in the light of the evidence *449 before them. I am satisfied that the act of 1876, properly construed, was not intended to enlarge the jurisdiction of the State assessors, or of the board of supervisors, by giving them original powers of valuation and assessment; that it was designed merely to regulate the practice on the hearing of appeals ; that now, as before that act, the powers of the State assessors are-appellate only; and that, with the exception above-pointed out, the original power of assessment and valuation is vested in the local assessors exclusively.
As the writ of certiorari ought not to be employed (especially to interfere with the assessment and collection of general taxes), unless there is some apparent, error to be corrected thereby, and for which there is no-other remedy, the result of these considerations is that the motion to supersede the writ should be granted.
I reach this conclusion with the less hesitation, because resting, as I do, upon the ground that, as matter-of law, there is no error in the proceedings before the-State assessors, my decision, if erroneous, may be appealed from and corrected.
Writ superseded.
The relators acquiesced in this decision.